THE HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PREMIER MORTGAGE RESOURCES, an Oregon limited liability company,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>CANOPY MORTGAGE, LLC, a Utah limited liability company; and DOES 1 through 10, inclusive;<br><br>　　　　　　　　　　　　Defendants. | Case No. 2:25-cv-00908-BJR<br><br>**MOTION TO DISMISS COMPLAINT, OR IN THE ALTERNATIVE, STAY CASE** |

MOTION TO DISMISS OR STAY
Case No. 2:25-cv-00908-BJR

BALLARD SPAHR LLP
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98101
206.223.7200 FAX: 206.223.7107

## I. INTRODUCTION

Premier Mortgage Resources, LLC claims that it employed Curt Lillibridge, Riley Lillibridge, Kiel Lillibridge, and Cameron Lillibridge in its mortgage banking business. The Lillibridges allegedly left Premier to take jobs with Canopy Mortgage, LLC. The Lillibridges then allegedly breached confidentiality agreements, and for one Lillibridge, perhaps, a non-solicitation agreement, by contacting Premier's customers. Premier claims that this constituted tortious interference by Canopy and reflects a civil conspiracy. Premier alleges its complex causes of action in a scant 16 paragraphs of "facts." Many of these allegations are on "information and belief." And none of them are supported by non-conclusory factual matter about what Canopy supposedly did, much less *how* it did anything improper. For this reason, Canopy respectfully requests that the complaint be dismissed with prejudice, or in the alternative, that the case be stayed pending the outcome of arbitrations between Premier and the Lillibridges.

## II. BACKGROUND

Premier's claims for tortious interference with business expectancy, tortious interference with contract, and civil conspiracy arise from defendant Canopy's alleged hiring of members of the Lillibridge family, who used to work for Premier, to work instead for Canopy. The Court must take Premier's factual allegations as true for the purposes of this motion. *Zinermon v. Burch*, 494 U.S. 113, 118 (1990).

A.    Premier and the Lillibridges

Premier is a privately held mortgage banker operating throughout the United States. Dkt. 1-1 ¶¶ 1, 6. In 2017, Curt Lillibridge and his sons, Riley, Kiel, and Cameron, began working for Premier at its branch in Everett, Washington. *Id.* ¶ 8. Curt served as an area manager, Riley as a branch manager, and Kiel and Cameron as loan officers. *Id.* ¶¶ 9–12. Each of the Lillibridges signed an employment agreement at an unspecified time. *Id.* ¶ 11. The Lillibridges agreed that Premier's customer records were proprietary, were to be used solely for Premier's benefit, and were to be returned to Premier upon the termination of the Lillibridges' employment. *Id.* ¶ 13. The Lillibridges also agreed that "all mortgage loans that were in process at the time of employment

MOTION TO DISMISS OR STAY - 1
Case No. 2:25-cv-00908-BJR

BALLARD SPAHR LLP
1420 Fifth Avenue, Suite 4200
P.O. Box 91302
Seattle, Washington 98101
206.223.7000 Fax: 206.223.7107

separation[] were to remain [Premier's] exclusive property." *Id.* Riley, unique among his family, also agreed not to solicit Premier's customers and employees for two years following the end of his employment. *Id.* ¶ 14.

The Lillibridges "abruptly resigned from" Premier in December 2023. This "forced" Premier to close its Everett branch, which had been staffed by the Lillibridges and unnamed "additional employees." *Id.* ¶ 17.

B.  Canopy and the Lillibridges

Canopy is "a direct competitor of [Premier] in the mortgage industry." *Id.* ¶ 7. Premier alleges "upon information and belief" that the Lillibridges began working for Canopy "immediately after they resigned their employment with (or while still employed by)" Premier. *Id.* ¶ 16.

Premier then alleges three further developments attending the Lillibridges' new positions with Canopy. *Id.* ¶¶ 17–19. Each of these developments is similarly alleged on "information and belief." *See id.* Collectively, these alleged developments resulted "in millions of dollars of lost business revenue." *Id.* ¶ 20.

First, the Lillibridges "solicited and encouraged" Premier's employees to resign from Premier and work for Canopy. *Id.* ¶ 17. Premier alleges no Canopy involvement in this claimed Lillibridge conduct. Nor does it say *which* Lillibridge or Lillibridges did this or whom they solicited, their family or Premier's non-Lillibridge employees. *See id.*

Second, Canopy "with the assistance and knowledge" of the Lillibridges "misappropriated" Premiers' "confidential customer loan information for its own benefit, including the loans that were in the process of closing with [Premier] before they were transferred to and closed with and for the benefit of" Canopy. *Id.* ¶ 18. Premier does not allege what information was "misappropriated." *See id.* It does not allege why the information was confidential or what steps, beyond the Lillibridges' confidentiality agreements, were taken to protect its confidentiality. *See id.*

Third, Canopy "acting through the Lillibridges and others" contacted Premier's customers

MOTION TO DISMISS OR STAY - 2
Case No. 2:25-cv-00908-BJR

BALLARD SPAHR LLP
1420 Fifth Avenue, Suite 4200
P.O. Box 91302
Seattle, Washington 98101
206.223.7000 Fax: 206.223.7107

and "solicited them to transfer their in-process loans to" Canopy. *Id.* ¶ 19. Premier does not allege who these "customers" were or even that they took their business to Canopy. *See id.*

C. Premier's Claims

Following these "fact" allegations are a recitation of the elements of claims for tortious interference with business expectancy, *id.* ¶ 22–27, tortious interference with contract, *id.* ¶ 28–34, and civil conspiracy, *id.* ¶ 35–38. Premier alleges for example that Canopy "intentionally induced or caused the termination of [Premier's] business expectancies" and did so "for an improper purpose or by improper means." *Id.* ¶ 25–26. Premier also alleges that Canopy "intentionally induced the Lillibridges to breach their contractual obligations to plaintiffs" and that this "was for an improper purpose or by improper means." *Id.* ¶ 32–33. All of this was also supposedly subject to "an agreement whereby the Lillibridges would misappropriate [Premier's] confidential customer information and otherwise solicit Plaintiff's customers and employees for the purpose of [Canopy] acquiring said customers and employees through unlawful means." *Id.* ¶ 36. These "unlawful means" are not described.

Premier asserts that its "claims against the Lillibridges individually are subject to arbitration." *Id.* at ¶ 21.

### III. ARGUMENT

Premier's claims should be (A) dismissed for failure to state a claim, or in the alternative, (B) stayed pending the outcome of the arbitrations involving the Lillibridges.

A. The Complaint Should Be Dismissed for Failure to State a Claim.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard balances notice pleading against "the need to prevent a plaintiff with a largely groundless claim from taking up the time of a number of other people." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014) (quotations and brackets omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Pleadings

MOTION TO DISMISS OR STAY - 3
Case No. 2:25-cv-00908-BJR

BALLARD SPAHR LLP
1420 Fifth Avenue, Suite 4200
P.O. Box 91302
Seattle, Washington 98101
206.223.7000 Fax: 206.223.7107

that "are no more than conclusions[] are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Accordingly, a court should first "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Eclectic Props. E., LLC*, 751 F.3d at 996 (quotations and brackets omitted). The court should then assume the truth only of the remaining "well pleaded factual allegations." *Id.* at 997. The court should undertake a similar exercise with allegations pleaded on "information and belief." These allegations should be credited only "where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017). A complaint should be dismissed "when it fails to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016).

Under this standard, Premier fails to plausibly allege its claims for: (1) tortious interference with contract, (2) tortious interference with business expectancy, and (3) civil conspiracy.

    1.    <u>Tortious Interference with Contract Claim Should Be Dismissed.</u>

To prevail on a claim for tortious interference, a plaintiff must prove: (1) the existence of a valid contractual relationship; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage. *Leingang v. Pierce Cty. Med. Bureau, Inc.*, 930 P.2d 288, 300 (Wash. 1997); *see also T-Mobile USA, Inc. v. Huawei Device USA, Inc.*, 115 F. Supp. 3d 1184, 1194 (W.D. Wash. 2015) (same). Premier fails to allege plausibly: (a) the first element, a valid contract; (b) the second element, knowledge of the contract; (c) the third element, intentional interference with any of Premier's contracts; or (d) the fourth element, interference for an improper purpose or by improper means.

        a.    <u>Premier Fails to Allege Plausibly the First Element—A Valid Contract.</u>

Premier alleges so little about the Lillibridges' employment agreements that it is impossible to conclude the agreements are valid contracts, supported by consideration. While employment-

MOTION TO DISMISS OR STAY - 4
Case No. 2:25-cv-00908-BJR

BALLARD SPAHR LLP
1420 Fifth Avenue, Suite 4200
P.O. Box 91302
Seattle, Washington 98101
206.223.7000 Fax: 206.223.7107

related contracts, such as confidentiality agreements, are supported by consideration when made at the start of employment, post-employment modifications or agreements require "[i]ndependent, additional[] consideration," such as increased wages, a promotion, or a bonus. *Int'l Paper Co. v. Stuit*, No. C11-2139JLR, 2012 WL 1857143, at * 3 (W.D. Wash. May 21, 2012). Premier does not allege either start-of-employment formation or midstream additional consideration making the Lillibridges' contracts valid. This alone warrants dismissal. *See id.* at *9 ("[Plaintiff] has not alleged that the Confidentiality Agreements were supported by new consideration. Without allegations of a valid contractual relationship, [Plaintiff] cannot state a claim for tortious interference.").

      b. <u>Premier Fails to Allege Plausibly the Second Element—Knowledge</u>

The knowledge element requires that Canopy have known about the Lillibridges' agreements with Premier. This must be alleged with plausibility. *See Mann Law Grp. v. Digi-Net Techs., Inc.*, No. C13-59RAJ, 2013 WL 3754808, at *3 (W.D. Wash. July 15, 2013). Yet the complaint alleges no circumstances making it plausible that Canopy knew anything about the Lillibridges' agreements with Premier. There is no allegation that Premier contacted Canopy to inform it of any non-solicitation or confidentiality agreement and no allegation suggesting that Canopy should have known whom the Lillibridges previously worked for, much less any arrangements with their prior employer.

      c. <u>Premier Fails to Allege Plausibly the Third Element—Intent Causing Breach.</u>

The intent element of a tortious interference claim requires "purposefully improper interference." *Leingang*, 930 P.2d at 300; *see also Omega Env'tl, Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1166 (9th Cir. 1997). This purposeful interference must induce or cause a breach or termination of a relationship. *Omega Env'tl, Inc.*, 127 F.3d at 1166.

Premier offers no factual allegation to support its assertion that Canopy intended to interfere with any contract, much less that it intended to do so in an improper manner. Premier alleges only conclusions—that Canopy "intentionally induced the Lillibridges to breach their

MOTION TO DISMISS OR STAY - 5
Case No. 2:25-cv-00908-BJR

BALLARD SPAHR LLP
1420 Fifth Avenue, Suite 4200
P.O. Box 91302
Seattle, Washington 98101
206.223.7000 Fax: 206.223.7107

contractual obligations"—and that Canopy acted "for an improper purpose or by improper means." Dkt. 1-1 ¶¶ 32–33. These allegations fail even to state the required *conclusion* because they do not allege that the *impropriety* was purposeful. *See Leingang*, 930 P.2d at 300. That is fatal to the claim. Also fatal to the claim is that these "conclusory allegations of law" are "insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). "Without facts supporting an inference that [a party] specifically intended to interfere . . . or that [a party] did anything other than exercise legitimate legal rights in good faith, the claim must be dismissed." *State Farm Mut. Auto. Ins. Co. v. Peter J. Hanson, P.C.*, No. C16-1085RSL, 2017 WL 1304445, at *4 (W.D. Wash. Feb. 3, 2017).

Nor does the complaint allege that anything that Canopy did caused the Lillibridges to breach their contract with Premier. To the contrary, the complaint alleges that certain Lillibridge breaches began *before* the Lillibridges took Canopy jobs. *Compare* Dkt. 1-1 ¶ 16 (alleging the Lillibridges began working for Canopy *after* resigning from Premier), *with id.* ¶ 17 (alleging the Lillibridges solicited co-employees *before* their own resignation). Indeed, some allegations leave it unclear whether the Lillibridges breached their contract at all. Paragraph 18 alleges that *Canopy* "misappropriated" customer information "with the assistance and knowledge of the Lillibridges." *Id.* ¶ 18. But nowhere does the complaint allege a contract requiring the Lillibridges to act on knowledge of another's supposed misappropriation. Nor does the complaint allege what "assistance" the Lillibridges supplied or how this constituted a breach of their agreement. Similarly, paragraph 19 alleges that Canopy "acting through the Lillibridges" contacted Premier's customers. *Id.* ¶ 19. But it does not allege that Canopy enlisted the one out of the four Lillibridges subject to a non-solicitation agreement. *Compare id.*, *with id.* ¶¶ 13–14 (stating only Riley Lillibridge was subject to a non-solicitation agreement).

        d.    <u>Premier Fails to Allege the Fourth Element—Impropriety.</u>

A "plaintiff must show not only that the defendant intentionally interfered with his business relationship, but also that the defendant had a duty of non-interference[,] i.e., that he interfered for an improper purpose . . . or . . . used improper means." *Pleas v. City of Seattle*, 774 P.2d 1158,

MOTION TO DISMISS OR STAY - 6
Case No. 2:25-cv-00908-BJR

BALLARD SPAHR LLP
1420 Fifth Avenue, Suite 4200
P.O. Box 91302
Seattle, Washington 98101
206.223.7000 Fax: 206.223.7107

1163 (Wash. 1989) (quotations omitted). Premier does not plausibly allege either that Canopy acted with an improper purpose or by improper means.

First, Premier alleges no facts indicating an improper purpose. "Asserting one's rights to maximize economic interests does not create an inference of ill will or improper purpose." *Omega Env'tl*, 127 F.3d at 1166. An improper purpose in the context of a tortious interference claim is the "improper objective of harming the plaintiff." *Pleas*, 774 P.2d at 1163. "Mere knowledge" of an agreement does not demonstrate an improper purpose. *Mann Law Grp.*, 2013 WL 3754808, at *4. There is simply no factual allegation that Canopy acted to harm Premier. *See Stuc-O-Flex Int'l, Inc. v. Low & Bonar, Inc.*, No. 2:18-CV-01386-RAJ, 2019 WL 4688803, at *5 (W.D. Wash. Sept. 26, 2019) (dismissing a tortious interference claim because, while the plaintiff alleged that the defendants "intended to interfere," there were "no facts suggesting that [defendants] had an improper purpose or motive").

Second, there is no allegation entitled to a presumption of truth that Canopy used improper means. "Interference can be 'wrongful' by reason of a statute or other regulation, or a recognized rule of common law, or an established standard of trade or profession." *Pleas*, 774 P.2d at 1163. The only allegations are that the Lillibridges contacted and solicited co-employees, that *Canopy* misappropriated confidential customer information, and that *Canopy* contacted customers to transfer their in-process loans to Canopy. Dkt. 1-1 ¶¶ 17–19. These allegations are deficiently pleaded and are preempted by the Washington Uniform Trade Secrets Act (UTSA).

Begin with the lack of plausibility. The Lillibridges allegedly contacted their co-employees *before* starting work at Canopy. Premier alleges this on information and belief. There is no allegation that Canopy did anything to cause this, much less anything improper. Nor is there any impropriety alleged in Canopy's receipt of "assistance" from the Lillibridges in accessing confidential customer loan information or contacting Premier's customers. Nothing about the means for securing assistance are alleged, so even if there were an alleged induced breach there is no alleged impropriety in inducing it. But the assistance is not even alleged plausibly as a breach. Canopy would be entitled, for example, to use public information to contact Premier's customers,

MOTION TO DISMISS OR STAY - 7
Case No. 2:25-cv-00908-BJR

BALLARD SPAHR LLP
1420 Fifth Avenue, Suite 4200
P.O. Box 91302
Seattle, Washington 98101
206.223.7000 Fax: 206.223.7107

even if the Lillibridges assisted in using the phone book. When an allegation is consistent with "both [a plaintiff's] theory of liability and [an] innocent alternative," it fails to be "plausible within the meaning of *Iqbal* and *Twombly*." *Electic Props. E., LLC*, 751 F.3d at 999. So it is here.

Further, all of these supposed actions are alleged on "information and belief." But these things are not "peculiarly" within Canopy's knowledge since Premier knows the identities and contact information of supposedly solicited employees or customers and could presumably ask these people what happened. Nor does Premier allege "factual information that makes the inference of culpability plausible." *Park*, 851 F.3d at 928. Indeed, even on information and belief, it alleges only conclusions. The information-and-belief allegations are therefore doubly doomed as both conclusory and not squarely alleged. They are not entitled to a presumption of truth. *Id.*

Next consider UTSA preemption. RCW 19.108.900(1) provides that the UTSA "displaces conflicting tort, restitutionary, and other law of this state pertaining to civil liability for misappropriation of a trade secret." "Essentially, a plaintiff may not rely on acts that constitute trade secret misappropriation to support other causes of action." *Kforce Inc v. Oxenhandler*, No. C14-774 MJP, 2015 WL 1880450, at *2 (W.D. Wash. Apr. 24, 2015) (quotations and brackets omitted); *see also Int'l Paper Co.*, 2012 WL 1857143, at * 6. This is because "UTSA's preemption provision has generally been interpreted to abolish all free-standing alternative causes of action for theft or misuse of confidential, proprietary, or otherwise secret information falling short of trade-secret status." *Kforce Inc*, 2015 WL 1880450, at *2*. Accordingly, tortious interference claims based on misappropriation of confidential information or customer contacts using confidential information are preempted. *Id.* at *4.[1]

---

[1] Washington's preemption test calls for the court to "(1) assess the facts that support the plaintiff's civil claim; (2) ask whether those facts are the same as those that support the plaintiff's UTSA claim; and (3) hold that the UTSA preempts liability on the civil claim unless the common law claim is factually independent from the UTSA claim." *Thola v. Henschell*, 164 P.3d 524, 530 (Wash. Ct. App. 2007). The articulation of the judicial test assumes that a plaintiff makes both a UTSA claim and another overlapping claim. But the text of RCW 19.108.900 does not require that the plaintiff have actually asserted a UTSA claim to suffer preemption.

MOTION TO DISMISS OR STAY - 8
Case No. 2:25-cv-00908-BJR

BALLARD SPAHR LLP
1420 Fifth Avenue, Suite 4200
P.O. Box 91302
Seattle, Washington 98101
206.223.7000 Fax: 206.223.7107

2. <u>Tortious Interference with Business Expectancy Claim Should Be Dismissed.</u>

The tortious interference with contract claim and tortious interference with business expectancy claims share identical elements. *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 144 P.3d 276, 280 (Wash. 2006); *Leingang*, 930 P.2d at 300. Premier's tortious interference with business expectancy claim therefore suffers the defects of its tortious interference with contracts claim.

Premier's claims are flawed for an additional reason—a plaintiff must identify the specific relationship at issue. To establish an "expectancy," the plaintiff must show "a relationship between parties contemplating a contract with at least a reasonable expectancy of fruition." *Scymanski v. Dufault*, 491 P.2d 1050, 1055 (Wash. 1971). Allegations must "tie . . . losses to specific *relationships*" between the plaintiff and "identifiable third parties." *Pac. Nw. Shooting Park Ass'n*, 144 P.3d at 281 (emphasis original); *Mason v. Washington*, No. C17-186 TSZ, 2017 WL 2559621, at *7 (W.D. Wash. June 13, 2017) (dismissing tortious interference claim where plaintiff alleged "in conclusory fashion, that he had unspecified business relationships or expectancies . . . and [defendant] interfered with those relationships or expectancies in an unspecified manner"). Premier alleges none of this—it fails to allege which customer relationships it lost or anything about those customer relationships that indicates that there was a reasonable expectancy that the relationships would yield contracts. Instead, it alleges "unspecified references to 'customers.'" *Stuc-O-Flex Int'l*, 2019 WL 4688803, at *6. This is "not enough." *Id.*

3. <u>Conspiracy Claim Should Be Dismissed.</u>

To prevail on a claim for civil conspiracy, a plaintiff "must prove by clear, cogent, and convincing evidence that (1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the conspiracy." *Puget Sound Sec. Patrol v. Bates*, 389 P.3d 709, 714 (Wash. App. 2017). "Because the conspiracy must be combined with an unlawful purpose, civil conspiracy does not exist independently—its viability hinges on the existence of a cognizable and separate underlying claim." *Williams v. Geico Gen. Ins. Co.*, 497 F. Supp. 3d 977, 985 (W.D.

MOTION TO DISMISS OR STAY - 9
Case No. 2:25-cv-00908-BJR

BALLARD SPAHR LLP
1420 Fifth Avenue, Suite 4200
P.O. Box 91302
Seattle, Washington 98101
206.223.7000 Fax: 206.223.7107

Wash. 2020). Premier's civil conspiracy claim suffers defects warranting dismissal because: (a) there is insufficient allegation of an underlying claim, and (b) there is insufficient allegation of an agreement.

        a.    <u>Conspiracy Claim Lacks an Underlying Claim.</u>

Premier alleges the object of the supposed conspiracy was to "misappropriate . . . confidential customer information and otherwise solicit . . . customers and employees." Dkt. 1-1 ¶ 36. Because the underlying torts have not been alleged with plausibility, as set forth above, the conspiracy claim must also fail. *See HTP, Inc. v. First Merit Grp. Holdings, Inc.,* No. 21-CV-732-BJR, 2025 WL 405393, at *7 (W.D. Wash. Feb. 5, 2025) (dismissing conspiracy claim where court already dismissed underlying fiduciary duty and tortious interference claim); *Nw. Laborers-Emps. Health & Sec. Tr. Fund v. Philip Morris, Inc.*, 58 F. Supp. 2d 1211, 1216 (W.D. Wash. 1999) ("In Washington . . . a civil conspiracy claim must be premised on underlying 'actionable wrongs,' 'overt acts,' or a 'tort working damage to the plaintiffs. A conspiracy claim fails if the underlying act or claim is not actionable." (citations omitted)).

Nor can the tortious interference with contract claim be the basis of a conspiracy, even if the underlying tort were plausibly alleged. The Lillibridges cannot both supply the conspiratorial agreement and the contract to be interfered with. Allowing this would end-run the rule that a person cannot interfere with his own contract. "Washington courts have consistently held that the doctrine of tortious interference cannot be applied to individuals or entities that are parties to the contract" and "[i]f a plaintiff seeks to recover against parties to the contract, the cause of action must arise from the violation or breach of the contractual relationship." *Stuc-O-Flex Int'l, Inc.,* 2019 WL 4688803, at *4 (quotations omitted).

        b.    <u>Conspiracy Claim Allegations Fail to State a Claim.</u>

Premier also fails to allege facts making plausible an agreement between the Lillibridges and Canopy. Conclusory allegations of an agreement do not suffice. *See Fairhaven Health, LLC v. BioOrigyn, LLC*, No. 2:19-CV-01860-RAJ, 2020 WL 5630473, at *11 (W.D. Wash. Sept. 21, 2020); *Hunter v. Ferebauer*, 980 F. Supp. 2d 1251, 1261 (E.D. Wash. 2013) (dismissing

MOTION TO DISMISS OR STAY - 10
Case No. 2:25-cv-00908-BJR

BALLARD SPAHR LLP
1420 Fifth Avenue, Suite 4200
P.O. Box 91302
Seattle, Washington 98101
206.223.7000 Fax: 206.223.7107

conspiracy claim because the complaint contained only "conclusory language that is devoid of factual basis . . . to allege a conspiracy"). But this is all Premier offers—information-and-belief allegations that Canopy and some unidentified number of the Lillibridges conspired. Dkt. 1-1 ¶ 36. Nowhere does Premier allege how or when or where Canopy and the Lillibridges agreed, what, when or how customer information was stolen, or which customers or employees were solicited. Premier does not even allege which of the Lillibridges formed the conspiracy.

B.   The Court Should, in the Alternative, Stay the Case Pending Arbitration.

If the court does not dismiss the case, it should stay the case pending the outcome of the arbitration Premier alleges. *See* Dkt. 1-1 ¶ 21. This is within the court's discretion to do in the interests of "economy and efficiency." *See United States for Use & Benefit of Newton v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983).

"Courts generally grant motions to stay where the plaintiff's claims against a non-signatory defendant are intertwined with their arbitrable claims against another defendant." *Kater v. Churchill Downs Inc.*, No. C15-612RBL, 2019 WL 3944323, at *2 (W.D. Wash. Aug. 21, 2019). In evaluating the propriety of a stay, the Court considers whether the non-signatory lawsuit "depends upon the same facts and is inherently inseparable from the arbitrable claims" or "would involve significant expense and inconvenience." *Ballard v. Corinthian Colls., Inc.*, No. C06-5256-FDB, 2006 WL 2380668, at *2 (W.D. Wash. Aug. 16, 2006). This is the case when a claim in court has an element depending on the validity of an arbitrable claim. *See Maguire Ins. Agency, Inc. v. Amynta Agency, Inc.* 652 F. Supp. 3d 1313, 1328 (W.D. Wash. 2023) (staying aiding and abetting claim when underlying claim was arbitrable).

In this case, Premier's claims against Canopy depend on actions allegedly taken by the Lillibridges—the Lillibridges' alleged breach of contract to Premier by soliciting co-employees and disclosing confidential information, the Lillibridges' assistance in contacting Premier's customers, and the Lillibridges' alleged agreement with Canopy to do these things. If the arbitrator determines that the Lillibridges did not breach a contract with Premier, this will preclude Premier

MOTION TO DISMISS OR STAY - 11
Case No. 2:25-cv-00908-BJR

BALLARD SPAHR LLP
1420 Fifth Avenue, Suite 4200
P.O. Box 91302
Seattle, Washington 98101
206.223.7000 Fax: 206.223.7107

from re-litigating some or all issues against Canopy and thereby collaterally estop Premier's claims here. *See Hansen v. Musk*, 122 F.4th 1162, 1173–75 (9th Cir. 2024) (confirmed arbitration decision given issue preclusive effect); *see also Wash. Sch. Risk Mgmt. Pool v. Am. Re-Ins. Co.,* No. 21-CV-00874-LK, 2023 WL 195904, at *6 (W.D. Wash. Jan. 17, 2023) (staying action where arbitrable and non-arbitrable claims relied on the same facts in part because the arbitrator's decision "could moot the stayed litigation").

If the court does not dismiss these claims, then they should be stayed.

## IV. CONCLUSION

For the foregoing reasons, the court should dismiss the complaint in its entirety. In the alternative, the court should stay the action pending the resolution of the arbitrations.

On May 20, 2025, the undersigned conferred by videoconference with counsel for Premier regarding the motion to dismiss and by telephone on May 21, 2025, regarding the request, in the alternative, for a stay. The parties were unable to reach an agreement obviating the need for the motion. The undersigned appreciates Premier's counsel's availability to confer promptly, in light of the deadline set for this motion by Rule 81(c)(2)(C).

DATED: May 21, 2025

BALLARD SPAHR LLP

By: *s/ Devon McCurdy*
Jeffrey Odom, WSBA No. 36168
Devon J. McCurdy, WSBA No. 52663
1420 Fifth Avenue, Suite 4200
P.O. Box 91302
Seattle, Washington 98111-9402
Telephone: 206-223-7000
odomj@ballardspahr.com
mccurdyd@ballardspahr.com
*Attorneys for Defendant Canopy Mortgage, LLC*

MOTION TO DISMISS OR STAY - 12
Case No. 2:25-cv-00908-BJR

BALLARD SPAHR LLP
1420 Fifth Avenue, Suite 4200
P.O. Box 91302
Seattle, Washington 98101
206.223.7000 Fax: 206.223.7107