The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PREMIER MORTGAGE RESOURCES LLC,

      Plaintiff,

v.

CANOPY MORTGAGE LLC,

      Defendant.

NO. 25-cv-908-BJR

**ORDER DENYING DISMISSAL**

## I.   INTRODUCTION

Plaintiff, Premier Mortgage Resources, LLC, has brought this lawsuit against its direct competitor, Canopy Mortgage LLC, for inappropriately soliciting and hiring its employees, and misappropriating its potential customers and pending mortgage loan applications. Am. Compl., ECF No. 14. Currently pending before this Court is Defendant Canopy's Motion to Dismiss Amended Complaint, or in the Alternative, Stay Case, ECF No. 22. Having reviewed the materials[1] and the relevant legal authorities, the Court will DENY the motion. The reasoning for the Court's decision follows.

---

[1] Including the motion, ECF No.22; Plaintiff's response in opposition, ECF No. 23; and Defendant's reply, ECF No. 24; together with Plaintiff's amended complaint, ECF No. 14.

ORDER DENYING DISMISSAL

- 1

## II.  BACKGROUND

In a ruling on a motion to dismiss, this Court must accept the factual allegations in the plaintiff's complaint as true and construe those facts in the light most favorable to the plaintiff. *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). Premier alleges that in 2017, it hired Curt Lillibridge and his three sons, Riley, Kiel and Cameron (collectively, the "Lillibridges") to work in its Everett, Washington branch. Am. Compl. ¶ 10. Curt was employed as an Area Manager, and he oversaw the branch operations. *Id.* ¶ 11. Riley was the Branch Manager, and Kiel and Cameron were Loan Officers. *Id.* ¶¶ 12-13. The Lillibridges each signed employment agreements, which contained customer transaction retention clauses, confidentiality clauses, and non-solicitation clauses that are common in the mortgage industry. *Id.* ¶¶ 15, 19.

Premier alleges that in late November 2023, Canopy recruited the Lillibridges to join the firm and bring with them Premier's other Everett employees, customer leads, and in-process loan applications. *Id.* ¶¶ 20-28, 31. While the Lillibridges were still employed at Premier, they changed their email access credentials to Premier's software system for managing customer leads by using an email address provided to them by Canopy. *Id.* ¶ 27. This tactic effectively transferred all of Premier's customer leads to Canopy. *Id.* Premier alleges that Canopy misappropriated mortgage applications that were in-process at Premier's Everett branch. *Id.* ¶¶ 27-28. In December 2023, the Lillibridges resigned from their employment with Premier and moved to Canopy, along with most of Premier's remaining employees at the Everett branch, which resulted in Premier being forced to close its Everett branch. *Id.* ¶¶ 22-24, 30.

On July 10, 2024, Premier's counsel sent cease and desist letters to the Lillibridges and Canopy. *Id.* ¶ 32. In December 2024, Curt initiated arbitration pursuant to the arbitration clause in

ORDER DENYING DISMISSAL

- 2

his employment agreement, and in March 2025, Premier initiated three separate arbitrations against Cameron, Kiel, and Riley. *Id.* ¶¶ 33-34. All four arbitrations remain pending. *Id.* ¶ 35.

Premier then initiated this lawsuit in April 2025 against Canopy in Superior Court, Snohomish County. Compl., ECF No. 1-1. Canopy removed the case to this Court in May 2025. Notice of Removal, ECF No. 1. By the amended complaint, Premier asserts three causes of action against Canopy (1) Tortious interference with business expectancy; (2) Tortious interference with contract; and (3) Civil conspiracy. Am. Compl. ¶¶ 36-52. Canopy contends that Premier's complaint fails to adequately allege these causes of action against it, seeking dismissal with prejudice, and in the alternative, Canopy asks the Court to stay this case pending the outcome of the outstanding arbitrations between Premier and the Lillibridges. Mot. 14.

### III.  LEGAL STANDARD

#### A.    Standard on motion to dismiss

A motion to dismiss for failure to state a claim under Rule 12(b)(6) is properly granted if the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016). When considering a motion to dismiss under Rule 12(b)(6), courts must accept the factual allegations in the complaint as true and construe such allegations in the

ORDER DENYING DISMISSAL

- 3

light most favorable to the plaintiff. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886-87 (9th Cir. 2018).

### B.    Standard on motion to stay

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 428 (1936). In considering whether to grant a stay, courts consider several factors, including potential prejudice to either party and whether a stay would promote judicial economy. *See CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962); *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). The inherent power to stay includes granting a stay of the case "pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979).

## IV.   DISCUSSION

Canopy contends that Premier fails to plausibly allege its claims for tortious interference of contract or business expectancy, and without an underlying viable claim, the civil conspiracy claim must also fail. Mot. 10-11. Premier argues that Canopy is attempting to impose an evidentiary burden at the pleadings stage and asserts that it has sufficiently alleged its claims. Opp'n 5. The Court will begin by addressing the claims for tortious interference.

### A.    Tortious interference

Premier asserts its claim for tortious interference with business expectancy based on the probability of expected future economic benefit in the Everett branch's customer leads and in-process mortgage applications. Am. Compl. ¶ 37. And it asserts its claim for tortious interference

ORDER DENYING DISMISSAL

- 4

with contract based on the valid contractual employment relationships it held with the Lillibridges. *Id.* ¶ 43. A claim of tortious interference with contractual relationship or business expectancy, requires a plaintiff to plead the following elements: "(1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage." *Leingang v. Pierce Cnty. Med. Bureau, Inc.*, 131 Wn. 2d 133, 157 (1997). Canopy argues that Premier fails to allege four of the five elements, appearing to accept that the resultant damage has been adequately pleaded. Mot. 5, 10.

### 1.    A valid contract or business expectancy

#### a.    Premier alleges a valid contract

Premier alleges that each of the Lillibridges agreed to become employees and executed employment agreements. Am. Compl. ¶¶ 10-13, 15. They further allege that the employment agreements are currently being arbitrated, which supports an allegation of their validity. *Id.* ¶¶ 33-35. Premier's allegations are sufficient to plausibly plead it had valid contracts with the Lillibridges.

#### b.    Premier alleges a valid business expectancy

"A valid business expectancy includes any prospective contractual or business relationship that would be of pecuniary value." *Tori Belle Cosms. LLC v. McKnight*, No. 21-cv-0145, 2022 WL 3927069, at *6 (W.D. Wash. Aug. 31, 2022) (quoting *Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Grp., Inc.*, 114 Wn. App. 151, 158 (2002)). Premier's allegation that "there were hundreds of mortgage loans and mortgage loan applications that were being processed" at its Everett branch in December 2023, Am. Compl. ¶ 28, suffices to show that it had the "opportunity

ORDER DENYING DISMISSAL

to obtain *prospective* customers," *Greensun Grp., LLC v. City of Bellevue*, 7 Wn. App. 2d 754, 768 (2019). Premier described "*in-process*" loan and mortgage applications. Am. Compl. ¶ 26-27, 29, 31 (emphasis added). Canopy argues that Premier must identify a specific relationship between parties contemplating a contract. Mot. 10. However, "Washington courts require a plaintiff to show only that its future business opportunities are a reasonable expectation and not merely wishful thinking." *Greensun*, 7 Wn. App. 2d at 769 (citation omitted). Therefore, the Court finds Premier's allegations are sufficient to plausibly plead a business expectancy.

### 2.    Knowledge of the contract or expectancy

Premier alleges that the Lillibridges provided Canopy with copies of their employment agreements, Am. Compl. ¶ 18, adding that such agreements are common in the mortgage industry, *Id.* ¶ 19. Premier further alleges that Canopy knew that the Lillibridges were contractual employees because they were licensed mortgage salespeople who would need to update their licenses. *Id.* ¶ 25. Canopy is alleged to have provided a canopymortgage.com email address to the Lillibridges–before they submitted their resignations to Premier–to facilitate the transfer of Premier's customer leads to Canopy. *Id.* ¶¶ 26-27. Additionally, Premier alleges that the Lillibridges had been reviewing and testing Canopy's technology platforms for a few months prior to their leaving Premier. *Id.* ¶ 21. These allegations, taken as true, are sufficient to make it plausible that Canopy had knowledge of Premier's business expectancies with its prospective customers as well as Premier's contracts with its employees.

### 3.    Intentional interference

"A party intentionally interferes with a business expectancy if it 'desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action.'"

ORDER DENYING DISMISSAL

- 6

*Greensun*, 7 Wn. App. 2d at 772 (quoting *Newton*, 114 Wn. App. at 158). Premier's allegations that Canopy provided the Lillibridges with access to Canopy's technology platforms and provided email login credentials to the Lillibridges–before they resigned from Premier–makes it plausible that Canopy intended for the Lillibridges to leave Premier and enter into an employment relationship with Canopy. It is also plausible that Canopy intended for the Lillibridges to use their new Canopy emails to effect a transfer of Premier's customer leads to Canopy.

### 4.    Improper motive or means

A plaintiff must also establish that the defendant "interfered for an improper purpose or used improper means." *See Leingang*, 131 Wn. 2d at 157. A plaintiff needs to show either improper means *or* an improper purpose, not both, to establish the fourth element of a tortious interference claim. *See Pleas v. City of Seattle*, 112 Wn. 2d 794, 803-04 (1989) (*en banc*) (noting that a cause of action for tortious interference can arise from "*either* the defendants' pursuit of an improper objective of harming the plaintiff or the use of wrongful means that in fact cause injury to plaintiff's contractual or business relationships." (emphasis added)). "A court need not find that a defendant acted with ill will, spite, defamation, fraud, force, or coercion in order to find improper purpose or means." *Libera v. City of Port Angeles*, 178 Wn. App. 669, 677 (2013).

Premier alleges that Canopy collaborated with the Lillibridges to misdirect customer leads and misappropriate in-process loan applications to Canopy, and to induce other employees to resign and sign employment contracts with Canopy. According to Premier, Canopy facilitated the employees breach of their employment contracts and encouraged improper solicitation of Premier's employees. This unlawful misappropriation forced Premier to close its Everett branch.

ORDER DENYING DISMISSAL

- 7

Canopy argues that the claim is preempted by the Washington Uniform Trade Secrets Act ("UTSA"). Mot. 9-10. The UTSA "displaces conflicting tort, restitutionary, and other law of this state pertaining to civil liability for misappropriation of a trade secret ." *Kforce Inc v. Oxenhandler*, No. C14-774 MJP, 2015 WL 1880450, at *2 (W.D. Wash. Apr. 24, 2015) (quoting RCW 19.108.900(1)). But the UTSA does not displace "[c]ontractual or other civil liability or relief that is not based upon misappropriation of a trade secret." *Id.* (citing RCW 19.108.900(2)). Here, Premier makes no UTSA claim, so there is no conflicting claim and no risk of "duplicate recovery for a single wrong." *Id.*

Canopy further argues that it was merely taking normal business actions in the process of hiring new employees and contends there are no factual allegations to support an inference that they intended to interfere with Premier. Mot. 7-8. Indeed, Canopy may choose to argue a good faith defense of its actions as this case proceeds. However, drawing reasonable inferences in Premier's favor from the allegations in the complaint, the Court finds that "purposefully improper interference" is sufficiently pleaded.

### 5.    Resultant damage

Premier alleges that Canopy's actions resulted in the closure of Premier's Everett branch and the loss of hundreds of in-process mortgage loans. And Canopy does not dispute that Premier has sufficiently pleaded damages. The Court agrees that resultant damage has been sufficiently pleaded.

Accordingly, the Court finds that Premier has plausibly pleaded the tortious interference claims with sufficient factual content to allow the reasonable inference to be drawn that Canopy is liable for the misconduct alleged. The Court will allow these claims to proceed to discovery.

ORDER DENYING DISMISSAL

- 8

**B.      Civil conspiracy**

The crux of a civil conspiracy claim is not the conspiracy itself, but the tort committed through the conspiracy. *See Williams v. Geico Gen. Ins. Co.*, 497 F. Supp. 3d 977, 985 (W.D. Wash. 2020) ("Because the conspiracy must be combined with an unlawful purpose, civil conspiracy does not exist independently–its viability hinges on the existence of a cognizable and separate underlying claim."). To plead a civil conspiracy, a plaintiff must allege that "(1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means[ ] and (2) the conspirators entered into an agreement to accomplish the conspiracy." *Conklin v. Univ. of Washington Med.*, No. 18-cv-0090, 2018 WL 5895352, at *4 (W.D. Wash. Nov. 9, 2018) (quoting *Bonneville v. Pierce Cnty.*, 148 Wn. App. 500, 518 (2008)).

The Court has determined that Premier sufficiently pleaded the tortious interference claims, so Premier has the unlawful purpose upon which to rest its civil conspiracy claim. The Court further finds that Premier has adequately alleged a conspiratorial agreement between Canopy and the Lillibridges while the Lillibridges were still employed by Premier. And the agreement was supported by the alleged actions taken by Canopy and the Lillibridges, while they were still employed with Premier, to coordinate resignations and facilitate the solicitation of customers and employees.

Accordingly, the Court will allow Premier's civil conspiracy claim to proceed to discovery.

**C.      Stay**

Canopy requests that the Court stay this matter pending the outcome of the arbitrations between Premier and the Lillibridges, arguing that the claims against Canopy depend upon actions taken by the Lillibridges. Mot. 13-14. Canopy contends that if the arbitrator determines that the

ORDER DENYING DISMISSAL

1  Lillibridges did not breach their contracts with Premier, it will preclude Premier from re-litigating

2  some or all issues against Canopy. *Id.* at 14 (citing *Hansen v. Musk*, 122 F.4th 1162, 1173–75 (9th

3  Cir. 2024) and *Wash. Sch. Risk Mgmt. Pool v. Am. Re-Ins. Co.*, No. 21-CV-00874-LK, 2023 WL

4  195904, at *6 (W.D. Wash. Jan. 17, 2023)). Premier notes, however, that the claims in this lawsuit

5  are asserted against only Canopy, and they are not derivative, nor do they depend on resolution of

6  the arbitrations with the Lillibridges. Opp'n 13.

7          The cases cited by Canopy contained both arbitrable and non-arbitrable claims against the

8  defendants, which is not the situation before the Court. And even under those circumstances, "the

9  Ninth Circuit has expressed a 'preference for proceeding with the non-arbitrable claims when

10 feasible.'" *Wash. Sch. Risk Mgmt. Pool*, 2023 WL 195904, at *6 (quoting *United Comm'ns Hub,*

11 *Inc. v. Qwest Comm'ns, Inc.*, 46 F. App'x 412, 415 (9th Cir. 2002)). "A stay is appropriate when

12 'the arbitrable claims predominate' or 'the outcome of nonarbitrable claims will depend upon the

13 arbitrator's decision.'" *Id.* Here, while factual findings in the arbitrations may be relevant and

14 informative, Premier's claims against Canopy can proceed in parallel with the arbitration

15 proceedings against the Lillibridges. The Court further finds that there is potential prejudice to

16 Premier by delaying this case from moving forward.

17         In its discretion, the Court declines to stay this case, and it may proceed to discovery.

18                                  **V.   CONCLUSION**

19         For the foregoing reasons:

20         1.  Defendant's Motion to Dismiss Amended Complaint, or in the Alternative,
               Stay Case, ECF No. 22, is DENIED.

22         2.  The Court hereby lifts the stay of the initial scheduling order dates and will
               issue a new initial scheduling order forthwith.

24 ORDER DENYING DISMISSAL

25  - 10

1          DATED this 4th day of September 2025.

2

3                                                _____
                                                Barbara Jacobs Rothstein
4                                                United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    ORDER DENYING DISMISSAL

25     - 11